IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FRANCIS RYDAROWICZ, | CASE NO. 4:24-cv-1691 |
| Petitioner, | DISTRICT JUDGE |
| | BENITA Y. PEARSON |
| vs. | |
| | MAGISTRATE JUDGE |
| WARDEN MISTY MACKEY, | JAMES E. GRIMES JR. |
| Respondent. | **REPORT &** |
| | **RECOMMENDATION** |

Pro se Petitioner Francis Rydarowicz filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Rydarowicz is in custody at the Lake Erie Correctional Institution due to a journal entry of sentence in the case *State v. Rydarowicz*, Mahoning County Court of Common Pleas, Case No. 19-CR-704. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court dismiss the Petition.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Seventh Appellate District summarized the facts underlying Rydarowicz's conviction as follows:

> {¶2} On June 22, 2019, Appellant stabbed his wife Katherine in the back while they were at a motel where he lived in Coitsville. The police were called after the victim collapsed in the parking lot area. After securing the victim's body, the police saw Appellant in the doorway of his motel room. He was bleeding from the neck and wrist. Before being transported to the hospital, Appellant claimed he stabbed his wife in self-defense. Appellant was indicted for five alternate counts: aggravated murder (prior calculation and design); murder (death caused purposely); murder (death proximately resulted from felonious assault); felonious assault (with a deadly weapon); and domestic violence (a third-degree felony due to prior convictions, with three priors listed). (8/22/19 Ind.)
>
> {¶3} The case was tried to a jury in August 2021. The victim's daughter testified her mother and Appellant were married and lived in the motel together. She said Appellant was known by the name Jerry; she provided the names of his two sisters and his ex-wife (who were mentioned in recovered phone messages). (Tr. 326-328).
>
> {¶4} Before the stabbing, a neighbor who lived near the motel saw Appellant and the victim talking near a tree where their dogs were tied. She then watched the victim make two trips from the motel room carrying different baskets. Minutes later, the neighbor saw the victim running across the grass in front of the motel; she thereafter noticed the police at the scene. (Tr. 355-357).
>
> {¶5} The victim's friend testified he provided the victim with a ride to do errands on the day of her death (as her vehicle was not running). (Tr. 333). While they were out, Appellant called the victim, prompting a trip to the motel so the victim could retrieve some belongings. (Tr. 334). The victim drove

2

her friend's truck to the motel parking lot after dropping him off at the convenience store across the street from the motel to wait for her. (Tr. 336). The friend saw the victim bring a basket of items to his truck. He texted her a few times after worrying because she took longer than expected; she did not respond. (Tr. 338-339). When the friend exited the store, he saw a police officer approach a body in the drive of the motel's parking lot. (Tr. 339, 349).

{¶6} The first responding police officer testified he received a report at 6:30 p.m. that a woman had been shot at the motel. When he arrived, the victim had no pulse. He thus attempted chest compressions (but a large amount of blood was expelled from her nose and mouth). (Tr. 369-370). Bystanders pointed the police to a motel room. A second officer approached the room and found Appellant about to exit the room. This officer observed blood running from Appellant's neck to his chest and from his wrists; she instructed Appellant to step back into the room and lay on the bed. (Tr. 399-400). When asked about the location of the weapon, Appellant pointed to a knife on a table and said he had to use it to protect himself because the victim was coming after him. (Tr. 401-402, 420).

{¶7} Appellant was taken by ambulance to Mercy Health in Youngstown, where he underwent surgery on his neck and wrist. A nurse assisted with Appellant's post-surgical care. She heard Appellant tell his sisters the victim came looking for money and he had a car part under the bed but no money. (Tr. 500). Thereafter, the nurse supported Appellant's grieving mother as she entered his room. When the mother asked what happened, Appellant replied, "I stabbed her." (Tr. 490). He provided no further explanation to his mother. (Tr. 492). The nurse reported Appellant's statement to the hospital police. (Tr. 496). The nurse additionally testified Appellant's wrist wounds ran parallel on the inside of his left wrist. (Tr. 493-494). When she was asked if the wrist wounds appeared to be defensive wounds, she said defensive wounds are generally not located on the inside of one's arms. (Tr. 495).

3

{¶8} Testimony was also presented by the trauma surgeon who operated on Appellant's neck and wrist after he arrived at the hospital. The surgeon described bilateral neck stab wounds, which measured 3 and 8 centimeters. (Tr. 731, 745). He also described three lacerations to Appellant's left wrist. One measured 3 centimeters and caused significant damage to arteries, tendons, and nerves; the other two wrist wounds were more superficial. (Tr. 732, 747). The surgeon believed Appellant's wounds were consistent with self-inflicted wounds and inconsistent with defensive wounds. (Tr. 734-735). He also said Appellant was right-handed and weighed 225 pounds. (Tr. 737, 739).

{¶9} In searching the motel room, the police did not find additional weapons. (Tr. 391). The referenced car part was not found in the room or in the truck the victim was loading. (Tr. 375-377, 434). Some blood in the parking lot matched Appellant's DNA. (Tr. 437, 716). The blood under the victim's fingernails and on various locations on her shirt only matched her own DNA. (Tr. 716-717).

{¶10} The sample of blood from the tip of the knife matched Appellant's DNA (with a statistic of one in one trillion). (Tr. 714). The sample of blood from the base of the knife blade contained a mixture of DNA from Appellant and the victim on one side of the blade and only Appellant's DNA on the other side of the blade. Only Appellant's DNA was recovered from the top and middle of the knife handle. (Tr. 714-715).

{¶11} The medical examiner testified the victim was stabbed in the left middle back. The wound was four to six inches deep and entered her lung. (Tr. 787, 790). She had three fresh bruises, located on her inside arm near her elbow, her right leg, and her right shin. (Tr. 784). Although there were cocaine metabolites in her blood, she had no active drug in her system and was thus not under the influence of cocaine at the time of her death. (Tr. 795, 798, 800).

4

A painkiller in her system was at therapeutic levels. (Tr. 796-797, 800).

{¶12} A BCI forensic computer scientist extracted data from the phone Appellant possessed when he arrived at the hospital and from the victim's phone found in the truck she was loading. First, the witness recited texts between Appellant and one of his sisters. (Tr. 535-571); (St.Ex. 117a). On June 9, 2019, Appellant texted, "Hey I'm outta jail!! I am ready to bash the shit outta her!!!!" In the next few days, Appellant asked this sister for money, requested his dad's phone number, and inquired why his mother would not speak to him. On June 13, he disclosed he needed items from the pharmacy, and the next day, he said he needed help. On the day before the June 22 stabbing, he told this sister, "It just keeps getting worse and there's no help. Mom still won't answer me. Have you talked to them? * * * I just don't know what to do."

{¶13} Appellant also communicated with his other sister, by text and instant message. (Tr. 572-594); (St.Ex. 115a, 116a). On June 9, 2019, he declared, "I'm outta jail let's get her" (with seven exclamation points). Two days later, he said, "I thought you knew what my plan was from [the other sister]." In seeming to speak about the victim, Appellant said he "had to kiss her ass for 2 months to save 3 years in prison [and] could not fight with her for any reason" and asked his sister if they could talk on the phone so he could explain. He added, "I just got home from jail and she's been gone. I fucking hate her!!!" He also disclosed the following issues: he was starving; his truck had a blown transmission; his bank account was frozen; he was "stuck" on house arrest; and he was not permitted to travel to renew his expired driver's license.

{¶14} On June 12, he told this sister he was up all night worried "about what you said. If something happens. I need to get someone on my bank account asap." He then spoke of his children, said the only person he trusted was his ex-wife (as opposed to the

5

victim, who was his current wife), and asked his sister to help him communicate with them. Later messages indicate his ex-wife refused to communicate with him and was concerned with his expression of urgency. On June 14, he told his sister he was broke, going crazy, and trying to sell the dogs. On June 18, he observed, "I am homeless and she is gone!!!! I need my family. It's all I have to live for." On the day of the stabbing, Appellant told this sister, "my phone is going to be shut off any day now. They stopped my Social Security check. I'm jobless, and homeless. I have no reason to go on except for my kids and family. I need help immediately." An hour later, he said, "I can't keep texting like this. There is no time to waste. I need help immediately. If there's no chance. I need to know that."

{¶15} Conversations between Appellant and the victim were also admitted into evidence. (Tr. 595-643); (St.Ex. 114a). On June 7, 2019, Appellant expressed anger about the victim returning clothing to a man. Appellant told the victim he loved her and then instructed, "get home, no more meaningless bullshit." Appellant also observed, "I can't believe I have to beg you to stay away from other men. You are torchering me to death!!!! I'm done talking about it. Just please come home. I love you." (Text spellings are original.) He then noted he did not want her to stay away because she thought he was mad. He texted he needed her to stop somewhere for him and later declared, "I'm throwing up. Please hurry." Minutes later, he said, "I was throwing up and I'm starving." The next day he said she was lying and pleaded with her to answer him. She eventually replied angrily with a screenshot of a social media post wherein he denigrated her in various aspects of life.

{¶16} On June 9, Appellant said, "Enjoy your knife and camo snot rag." He accused her of being unfaithful while he was away and said, "you went through 5,000 and partied your ass off. I hope you had fun. But I'm not taking your dumb unpredictable bullshit any longer. I can't. You'll end

6

up putting me in prison. Your not worth it." The next text stated, "You had many chances to get away." Later, he texted, "Get your ass here right now!!!!! I have your things. I love you" (with 13 exclamation points). When he begged her to answer him, she replied, "Fuck you. Please never talk to me again." He responded, "You will be in my arms tonight safe and sound if it's the last thing I do!!"

{¶17} On June 14, the victim sent a captioned photograph of herself to Appellant. He deduced it was intended for someone else and replied, "Wrong man slut." After noting he viewed a post stating she was in a relationship, he said, "You're a whore and god knows it." The next day she asked for a car part he had, which she needed to fix her car. Among other insults, he said, "I wouldn't piss on you if you were on fire!!"

{¶18} On the day of the stabbing (after a week without communication), Appellant sent the victim a text asking if she still needed "this strut" and said he would put it on the car for her. When she asked the price, Appellant said, "I don't care. I just wanna do the right thing. I found some more clothes and you have mail here also." After they spoke on the phone, he told her to come alone, explaining he did not want to see her with another man. He also said she had some of his belongings, including a ring that "means more to me than it ever will you I want to be buried with that ring on my finger someday." In a subsequent text, Appellant observed, "You just called me. I heard a man's voice." (St.Ex. 114a).

{¶19} A stipulation was entered regarding Appellant's DNA profile and three prior domestic violence convictions. (Tr. 500). Appellant's parole officer testified he began supervising Appellant on June 5, 2019, based on a felony conviction of domestic violence where his wife was the victim. (Tr. 511). Upon questioning by defense counsel, the parole officer said he found no contraband or weapons at the motel when he visited Appellant. (Tr. 513). Appellant was on electronic monitoring house

arrest (EMHA), and the records showed he did not leave his allowed area on the day of the stabbing (except when transported to the hospital). (Tr. 515, 855).

{¶20} Appellant testified in his own defense. He said the victim picked him up when he was released from incarceration on June 5, 2019, but she soon moved out of the motel; he said she returned three times to retrieve belongings with a police escort. (Tr. 865, 868, 870). He claimed the victim stole money from his wallet during one of the escorted visits. (Tr. 873). He confirmed sending the text messages to his sisters and acknowledged he was speaking about the victim in the initial texts but said "bash" merely referred to actions against a person on social media. (Tr. 872). He also acknowledged he was upset the victim was with other men. (Tr. 898, 903).

{¶21} Appellant revealed he had owned the subject knife since he was nine years old but claimed he did not have it at the motel before the victim arrived. (Tr. 874). He said the victim had his knife and his ring, about which they argued. (Tr. 881-882). He denied luring the victim to the motel by offering a car part and claimed the part was in his truck bed. (Tr. 873).

{¶22} Appellant alleged the following events occurred: after the victim made trips to a truck with her belongings, she followed him to the room and asked to look under the bed; he held up the box spring and mattress for her to look underneath the bed; he felt a sharp pain on the left side of his neck; he turned to see her coming at him with a knife; he raised his arm to protect himself and disarmed her; she turned to an open utensil drawer containing steak and paring knives; and he stabbed her in the back in self-defense because he saw his bleeding reflection in a mirror and feared for his life. (Tr. 884-887). He said he also sustained a smaller wound to the right side of his neck and wounds to his left wrists during the altercation. (Tr. 888-889). He denied his wounds were self-inflicted. Instead of

8

calling an ambulance, he said he paced around the motel room trying to stop his bleeding. (Tr. 936-937). Appellant confirmed he was right-handed and disclosed he was 6'2" (while the victim was 5'6" or less). (Tr. 914-915, 935).

{¶23} The jury found Appellant not guilty of aggravated murder but guilty of murder and the other alternate charges. The court sentenced Appellant to 15 years to life for the murder in count two, merging the remaining charges. (8/23/21 J.E.).

*State v. Rydarowicz,* 210 N.E.3d 1133, 1137−41 (Ohio Ct. App. 2023).

**Procedural background**

*Trial court proceedings*

In August 2019, a Mahoning County Grand Jury indicted Rydarowicz on one count of aggravated murder, in violation of Ohio Revised Code 2903.02, (A), (F) (count one), two counts of murder, in violation of Ohio Revised Code 2903.02 (A), (D) (counts two and three), one count of felonious assault, in violation of Ohio Revised Code 2903.11(A)(2) (count four), and one count of domestic violence, in violation of Ohio Revised Code 2919.25(A), (D) (count five). Doc. 6-1, at 5−7 (Exhibit 1).[1] Count five included a "furthermore" finding that Rydarowicz had previously pleaded guilty to or was convicted of three domestic violence offenses. *Id*. at 7. Rydarowicz, through counsel, pleaded not guilty to the charges. *Id*. at (Exhibit 2).

---

[1]     In this report and recommendation, all of the citations to the docket refer to the ECF document and page number shown at the top of the page.

Rydarowicz filed a motion to suppress statements that he made to law enforcement and cheek-swab evidence officers obtained from him. Doc. 6-1, at 9−39 (Exhibit 4). After a hearing, the trial court sustained in part and overruled in part Rydarowicz's motion. *Id*. at 50−57.  (Exhibit 5). The court suppressed the statements that Rydarowicz made to law enforcement, but found that the cheek-swab evidence was lawfully obtained. *Id*. at 54−57.

Rydarowicz filed a motion to dismiss counts one, two, and three of the indictment. Doc. 6-1, at 58−140, 151−52 (Exhibits 6, 8). The trial court overruled Rydarowicz's motion. *Id*. at 159 (Exhibit 11).  Rydarowicz filed a motion to sever the aggravated murder count from the other counts; hold two separate trials; and to try the aggravated murder count first. *Id*. at 160−80 (Exhibit 12). The trial court held a hearing and overruled Rydarowicz's motion. *Id*. at 188−90 (Exhibit 14).

Meanwhile, the State moved to amend the indictment to correct a typographical error, Doc. 6-1, at 154 (Exhibit 9), which the trial court granted, *id*. at 158 (Exhibit 10).

Before trial, the parties filed motions in limine. The State sought to exclude the introduction of exculpatory statements that Rydarowicz made at the hospital to his mother and police officers unless the statements were introduced through Rydarowicz's testimony. Doc. 6-1, at 191−94 (Exhibit 15). After oral argument, the court granted the State's motion. *Id*. at 200 (Exhibit 17). Rydarowicz filed three motions in limine. First, he sought to prohibit the

State from using evidence of his prior criminal convictions to impeach him if he testified. *Id*. at 202 (Exhibit 18). Second, Rydarowicz asked the court to exclude the use of other-acts evidence, including his prior convictions, and any character testimony offered by his parole officer, Don Jones. *Id*. at 239 (Exhibit 19). The trial court sustained in part and overruled in part these issues raised in Rydarowicz's motions. *Id*. at 266−68 (Exhibit 20). Finally, Rydarowicz sought to exclude Police Captain Keith Brown from testifying that in his lay opinion, Rydarowicz's wounds were self-inflicted. *Id*. at 271 (Exhibit 21). The trial court granted this motion. *Id*. at 273 (Exhibit 22).

The case proceeded to trial. The jury found Rydarowicz not guilty of aggravated murder but guilty on the remaining counts. Doc. 6-1, at 274−75. At sentencing, the trial court merged all of the counts; sentenced Rydarowicz on count two, murder; and ordered him to serve an aggregate sentence of fifteen years to life in prison. *Id*. at 282−83 (Exhibit 25).

*Direct appeal*

Rydarowicz, through new counsel, appealed to the Ohio court of appeals. Doc. 6-1, at 288 (Exhibit 27). In his brief, he raised the following assignments of error:[2]

> 1. The trial court erred in permitting testimony concerning Appellant's medical treatment and his medical records as the admission of said evidence violated the patient-physician privilege.

---

[2]      In this report and recommendation, Rydarowicz's grounds for relief are reproduced as written.

> 2. The trial court erred by permitting the State to introduce expert testimony when the State and the experts failed to produce a written expert's report within 21 days of trial as required by Crim. R. 16(K).
>
> 3. The jury's verdicts of Guilty were not supported by sufficient evidence and were against the manifest weight of the evidence.

*Id.* at 289−91. Thereafter, Rydarowicz filed a pro se motion asking the Ohio court of appeals to order the State to produce to Rydarowicz all of the evidence in his case. *Id.* at 337−38 (Exhibit 29). The State responded to Rydarowicz's motion and stated that the motion was improper and that, in any event, before trial it had produced to Rydarowicz's trial counsel all discovery. *Id.* at 340 (Exhibit 30). On March 16, 2023, the Ohio court of appeals affirmed Rydarowicz's conviction. *Id.* at 342−68 (Exhibit 31). The next day, the court denied Rydarowicz's pro se motion for evidence. *Id.* at 369 (Exhibit 32).

On May 8, 2023, Rydarowicz filed in the Ohio Supreme Court a pro se notice of appeal and a motion for leave to file a delayed appeal. Doc. 6-1, at 370−72 (Exhibits 33, 34). On July 5, the Ohio Supreme Court granted Rydarowicz's motion for leave to file a delayed appeal and ordered him to file his brief within 30 days. *Id.* at 403 (Exhibit 35). On August 8, the Ohio Supreme Court dismissed Rydarowicz's case because he "failed to prosecute this cause with the requisite diligence." *Id.* at 404 (Exhibit 36). On August 11, Rydarowicz filed a document he called an "Entry Response"—a letter to the Ohio Supreme Court Clerk of Court responding to the Ohio Supreme Court's dismissal. *Id.* at 405 (Exhibit 37). Rydarowicz asserted that he believed he had

timely submitted to the prison his brief to be mailed and "ask[ed] the court to reconsider leaving [his] appeal pending until [he] find[s] out where [his] mail is." *Id*. On September 13, Rydarowicz filed an "Affidavit in Support of Motion for Leave to File Delayed Appeal," *id*. at 408 (Exhibit 38), and on September 25, he sent another letter to the clerk of courts discussing the timeliness of his documents, *id*. at 410 (Exhibit 39).

On October 10, 2023, the Ohio Supreme Court denied Rydarowicz's "entry response." Doc. 6-1, at 414 (Exhibit 40).

*Federal habeas corpus petition*

Rydarowicz states that on September 23, 2024, he placed in the prison mailbox his federal habeas corpus petition under 28 U.S.C. § 2254.[3] Doc. 1, at 15. He raised the following grounds for relief:

> **Ground one**: Petitioner's constitutional right to due process was violated when the trial court permitted testimony concerning petitioner's medical treatment to be admitted during trial.
>
> **Ground two**: Petitioner's constitutional right to due process was violated when the trial court permitted the state to introduce testimony in violation of criminal rule 16(K).
>
> **Ground three**: Petitioner's constitutional right to due process was violated where the convictions are not supported by sufficient evidence.

---

[3]    A petition is deemed filed when a petitioner places it the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 270 (1988).

Doc. 1, at 5–8. The Warden filed a Return of Writ. Doc. 6. Rydarowicz has not filed a traverse and the time period for him to do so has passed.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982)

14

(per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the

procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental

miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that state's court's adjudication "was *contrary to*," or "involved an *unreasonable application* of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1) (emphasis added); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal

17

principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law' refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting *White*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks

merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

**Grounds one and two are procedurally defaulted**

*1. Rydarowicz didn't present to the state court grounds one and two as federal constitutional violations.*

In ground one, Rydarowicz argues that the trial court violated his due process rights and Ohio Revised Code 2317.02(B)(l)[4] when it permitted at trial the testimony of the surgeon who treated Rydarowicz after the stabbing. Doc. 1 at 5. Rydarowicz claims that the following portions of the surgeon's testimony prejudiced him: Rydarowicz is right-hand dominant; his wounds appeared to be self-inflicted, rather than defensive; and the surgeon referred Rydarowicz for a psychiatric consult. *Id.* In ground two, Rydarowicz argues that his due process rights were violated when the court permitted the surgeon's testimony

---

[4]     Ohio Rev. Code Ann. § 2317.02(B)(1) provides, in relevant part, that a physician may not testify "concerning a communication made to the physician … by a patient in that relation or the advice of a physician … given to a patient" unless certain exceptions apply.

"in violation of criminal rule 16(K)." *Id*. at 7. Rydarowicz explains that Ohio Criminal Rule 16(K) requires the state to provide expert opinions to the defense before trial, and submits that a portion of the surgeon's testimony constituted opinion evidence that the State had not produced before trial. *Id*.

"Before seeking a federal writ of habeas corpus, a state prisoner must … giv[e] the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). To do so, the prisoner must "fairly present" the claim to the state court, "thereby alerting that court to the federal nature of the claim." *Id*.; *Koontz*, 731 F.2d at 368 (a habeas petitioner "must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law").

Rydarowicz in his direct-appeal brief argued that the trial court violated Ohio statutes and rules and he cited Ohio cases in support. *See* Doc. 6-1 at 289, 299–303 (ground one); 290, 303–07 (ground two). Rydarowicz's brief did not allege a federal constitutional violation. *See id*. Because Rydarowicz only presented grounds one and two to the Ohio court of appeals as state-law violations, rather than federal constitutional violations, grounds one and two are procedurally defaulted. *See Baldwin*, 541 U.S. at 29; *Koontz*, 731 F.2d at 368.

2. *Rydarowicz hasn't shown cause, prejudice, or actual innocence to excuse his procedural default.*

Rydarowicz has not asserted cause or prejudice to excuse his procedural default. He hasn't filed in state court an Ohio Appellate Rule 26(B) application to reopen to allege ineffective assistance of appellate counsel for failing to raise grounds one and two as federal constitutional violations.[5] And he has not alleged any reason indicating good cause for filing a late application to reopen now, about two years after it would have been due. *See, e.g., Prieto v. Schweitzer*, No. 4:18-cv-222, 2019 WL 2605639, at *8, n.5 (N.D. Ohio May 31, 2019) (the petitioner's failure to file an Ohio Appellate Rule 26(B) application to reopen or provide any reason why he had not filed one procedurally defaulted any ineffective-assistance-of-appellate-counsel claims), *report and recommendation adopted*, 2021 WL 147049 (N.D. Ohio Jan. 15, 2021); *Rice v. Welch*, No. 3:10-cv-1916, 2014 WL 4794585, at *26 (N.D. Ohio Sept. 23, 2014). Additionally, Rydarowicz hasn't alleged cause to excuse the procedural default of any ineffective-assistance-of-appellate-counsel claim. *See Edwards v.*

---

[5]     Ohio Appellate Rule 26(B) provides:

> A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

*Carpenter*, 529 U.S. 446, 451–53 (2000) (ineffective assistance of appellate counsel can serve as cause to excuse a procedural default, but only if the ineffective assistance of appellate counsel claim is not itself procedurally defaulted).

Finally, Rydarowicz has not shown that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see Schlup v. Delo*, 513 U.S. 298, 324 (1995) (a claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.").

I recommend that the Court find that grounds one and two are procedurally defaulted.

**Ground three is not cognizable and fails on the merits**

In ground three, Rydarowicz argues that his due process rights were violated because his convictions were not supported by sufficient evidence. Doc. 1 at 8. He "admitted he stabbed his wife, and does not contest the sufficiency of the evidence on the statutory elements of the offenses. However, [he] contends the state failed to present sufficient evidence to show he did not act in self-defense." *Id*.

22

The Warden argues that this claim is procedurally defaulted because Rydarowicz failed to pursue it to the Ohio Supreme Court. Doc. 6 at 14. Because the merits of this claim "presents a more straightforward ground for decision" than procedural default, I evaluate this claim on the merits.[6] *See Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1077 (6th Cir. 2015); *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

When reviewing a claim that a petitioner's conviction is not supported by sufficient evidence, the court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Cavazos v. Smith*, 565 U.S. 1, 7 (2011). The court defers to the trier-of-fact's determination. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The standard is not whether the trier-of-fact made the correct guilt or innocence determination, but whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). The

---

[6]     Rydarowicz submitted a receipt to the Ohio Supreme Court showing that on July 28, 2023, he requested from the prison postage for his court filing, a request that the prison processed three days later. Doc. 6-1, at 405–06. If Rydarowicz submitted his brief to the prison a week before it was due to the Ohio Supreme Court, any delay in processing and mailing it could be attributed to the prison. This could constitute cause to excuse the procedural default of claims that Rydarowicz failed to present to the Ohio Supreme Court, since the Ohio Supreme Court dismissed his appeal for failing to file his brief by the due-date, Doc. 6-1, at 407; *see Maples v. Stegall*, 340 F.3d 433, 438–39 (6th Cir. 2003) (finding that the petitioner showed cause to excuse a procedural default when he submitted his brief "to his prison unit manager five days prior to the [state supreme court] deadline" and his brief arrived at the court "one day late").

court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [fact-finder]." *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *see Coleman v. Johnson*, 566 U.S. 650, 651 (2012). So even if this Court were to conclude that a rational trier-of-fact could not have found Rydarowicz guilty beyond a reasonable doubt, the Court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

In his brief to the Ohio court of appeals, Rydarowicz raised his sufficiency claim along with a manifest-weight claim, Doc. 6-1, at 290, and the court considered these claims together, *Rydarowicz*, 210 N.E.3d at 1150; *see State v. Lee*, 814 N.E.2d 112, 115 (Ohio 2004) (sufficiency and manifest weight are "legally distinct issues," but "a determination that a conviction is supported

24

by the weight of the evidence will also be dispositive of the issue of sufficiency."). The Ohio court of appeals rejected Rydarowicz's claim as follows:

{¶66} Appellant's third assignment of error contains two separate topics, alleging:

"The jury's verdicts of Guilty were not supported by sufficient evidence and were against the manifest weight of the evidence."

{¶67} Whether the evidence is legally sufficient to sustain a conviction is a question of law dealing with adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). An evaluation of witness credibility is not involved in a sufficiency review, as the question is whether the evidence is sufficient if taken as true. *State v. Yarbrough*, 95 Ohio St.3d 227, 767 N.E.2d 216, ¶ 79, 82 (2002); *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). In other words, sufficiency involves the state's burden of production rather than its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390, 678 N.E.2d 541 (Cook, J., concurring).

{¶68} In reviewing the sufficiency of the evidence, the court views the evidence in the light most favorable to the prosecution to ascertain whether a rational juror could have found the elements of the offense proven beyond a reasonable doubt. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). *See also State v. Filiaggi*, 86 Ohio St.3d 230, 247, 714 N.E.2d 867 (1999) (reasonable inferences are also viewed in favor of the state); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (all of the evidence is to be considered in the light most favorable to the prosecution, including reasonable inferences). The question is merely whether "any" rational trier of fact could have found the contested elements were adequately established. *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d

866 (1998), quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.

{¶69} Appellant admitted he stabbed his wife, and he does not contest the sufficiency of the evidence on the statutory elements of the offenses. However, Appellant contends the state failed to present sufficient evidence to show he did not act in self-defense.

{¶70} Self-defense is an affirmative defense with an atypical burden of proof due to the March 28, 2019 statutory amendments to R.C. 2901.05. "The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense other than self-defense, defense of another, or defense of the accused's residence presented as described in division (B)(1) of this section, is upon the accused." R.C. 2901.05(A). "If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense * * * the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense * * *." R.C. 2901.05(B)(1).[]

{¶71} Deadly force can be used in self-defense if the defendant: (1) was not at fault in creating the situation giving rise to the confrontation; (2) had a bona fide belief he was in imminent danger of great bodily harm and that the only means of escape from such danger being the use of such force; and (3) did not violate a duty to retreat or avoid the danger. *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). Appellant acknowledges the state need only disprove one of the elements of self-defense. *See State v. Sarge*, 5th Dist. Knox No. 21CA000014, 2021-Ohio-4379, 2021 WL 5881749, ¶ 30, citing *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, 2020 WL 2042924, ¶ 31. Applying a sufficiency of the evidence test, Appellant concludes no rational fact-finder could have found an

element of self-defense was disproven even when the evidence is viewed in the light most favorable to the state.

{¶72} However, as the Supreme Court recently explained, the statutory amendment to R.C. 2901.05 did not place a burden of production on the state to be reviewed for sufficiency. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653. The amendment merely constituted a "change to the state's burden of persuasion regarding self-defense" because requiring the state to disprove an affirmative defense beyond a reasonable doubt does not cause the affirmative defense to become an element of the offense. *Id*. at ¶ 24. The defendant still has "the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense." *Id*. at ¶ 25 (the defendant satisfies his burden of production if the evidence and any reasonable inferences would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant). Accordingly, a self-defense claim that is submitted to the jury is not subject to review for the sufficiency of the state's evidence, as a sufficiency analysis applies only to the elements of an offense and the affirmative defense of self-defense remains subject only to a manifest weight of the evidence review on appeal. *Id*. at ¶ 27. We thus consider Appellant's contentions under his weight of the evidence argument.

*Rydarowicz*, 210 N.E.3d at 1150–52.

In short, Rydarowicz's sufficiency claim, which only challenges self-defense evidence, is not cognizable. The Sixth Circuit has explained:

the Ohio Supreme Court held that the amendments to Ohio's self-defense statute "did not eliminate the defendant's burden of production regarding a claim of self-defense." *State v. Messenger*, 216 N.E.3d 653, 660 (Ohio 2022). The court emphasized that the amended self-defense statute did not change the

elements of any offense: "Self-defense remains an affirmative defense in Ohio, and an affirmative defense is not an element of a crime." *Id*. at 659. The court concluded that "the sufficiency-of-the-evidence standard of review applies to [the defendant's] burden of production" regarding a self-defense claim while the prosecution's "new burden of disproving the defendant's self-defense claim beyond a reasonable doubt" is subject to review under the manifest-weight-of-the-evidence standard. *Id*. at 660.

"[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged," but "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required." *Patterson v. New York*, 432 U.S. 197, 210 (1977). "[T]he due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell*, 181 F.3d 731, 741 (6th Cir. 1999), *abrogated on other grounds as recognized by Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000). Because self-defense remains an affirmative defense under Ohio law, the prosecution's alleged failure to present sufficient evidence to disprove that Smith acted in self-defense or in defense of another did not raise a constitutional concern. Smith's manifest-weight-of-the-evidence argument likewise presented a state-law issue that is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007). Given that Smith's arguments about her affirmative defenses did not raise a constitutional issue, reasonable jurists could not

28

> debate the district court's rejection of her first three
> grounds for relief.

*Smith v. Smith*, No. 24-3251, 2024 WL 4287901, at *3 (6th Cir. July 2, 2024),

*cert. denied sub nom. Smith v. Olds*, No. 24-5652, 2024 WL 4874711 (Nov. 25,

2024); *see also Smith v. United States*, 568 U.S. 106, 110 (2013) ("While the

Government must prove beyond a reasonable doubt 'every fact necessary to

constitute the crime with which [the defendant] is charged,' '[p]roof of the

nonexistence of all affirmative defenses has never been constitutionally

required.'")) (internal citations omitted). Rydarowicz's sufficiency claim is

therefore not cognizable.

Moreover, even if it were cognizable, Rydarowicz's claim would fail on

the merits. The Ohio court of appeals continued:

> {¶73} Weight of the evidence concerns "the
> inclination of the greater amount of credible
> evidence, offered in a trial, to support one side of the
> issue rather than the other." *Thompkins*, 78 Ohio
> St.3d at 387, 678 N.E.2d 541. The court evaluates
> the effect of the evidence in inducing belief, but
> weight of the evidence is not a question of
> mathematics. *Id.* A weight of the evidence review
> considers whether the state met its burden of
> persuasion. *Id.* at 390, 678 N.E.2d 541 (Cook, J.,
> concurring) (as opposed to the burden of production
> involved in a sufficiency review). When a defendant
> claims the conviction is contrary to the manifest
> weight of the evidence, the appellate court is to
> review the entire record, weigh the evidence and all
> reasonable inferences, consider the credibility of
> witnesses, and determine whether, in resolving
> conflicts in the evidence, the trier of fact clearly lost
> its way and created such a manifest miscarriage of
> justice that the conviction must be reversed and a
> new trial ordered. *State v. Lang*, 129 Ohio St.3d 512,

2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶74} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact occupies the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶75} Where a case is tried by a jury, only a unanimous appellate panel can reverse on manifest weight of the evidence grounds. Ohio Constitution, Article IV, Section 3(B)(3). The power of the court of appeals to sit as the "thirteenth juror" is limited in order to preserve the jury's primary function of weighing the evidence. *Thompkins*, 78 Ohio St.3d at 389, 678 N.E.2d 541.

{¶76} As mentioned above, Appellant acknowledges a negative finding on one of the three self-defense elements would support the rejection of the defense. First, Appellant claims there was no evidence he was at fault in creating the situation because the victim came to the motel, she previously came with police escorts, no one said he started an argument, and he testified she stabbed him from behind with a knife she previously stole from him. Second, he says being stabbed in the neck would give rise to his bona fide belief of imminent danger of great bodily harm and stabbing her in the back was his only means of escape because she was heading toward a utensil drawer after he wrested the knife from her hand. Third, he points out there is no duty to retreat from one's home. *State v. Williford*, 49 Ohio St.3d 247, 250, 551 N.E.2d 1279 (1990).

{¶77} However, Appellant's first two arguments rely on his version of events. The state presented

30

persuasive evidence contradicting Appellant's story. To recap, Appellant sent concerning texts about the victim and about his life to his sisters. His texts showed he was having a hard time finding a reason for hope in life. He was upset his wife was seeing other men and no longer wished to be in a relationship. He previously mentioned a plan to "bash the shit out of her." He argued with the victim in texts in the weeks preceding her death while she refused to return to the motel. After a week of silence, he texted to say he would give her a car part she needed, encouraging her to come to the motel alone for the part and some of her belongings. The police did not recover a car part. The victim came to the motel that day and began retrieving her belongings from the room. After a few trips to the vehicle with baskets, the victim ran from the motel with a deep stab wound to the middle of her back.

{¶78} Appellant owned the switchblade knife that killed the victim (stating he received it as a ninth birthday present). The fact that a parole officer did not find "contraband or weapons" when he first visited the motel room did not mean the knife was brought to the motel thereafter. Appellant was 6'2" while the victim was 5'6" or less. Appellant did not call 911 to report the alleged attack or seek an ambulance for the victim or himself even though he said he was worried about the blood running from his deep wounds.

{¶79} Only the victim's own DNA was found in the blood recovered from her body and clothes. The location of Appellant's blood on the knife in comparison to the location of the victim's blood was telling as to the sequence of events. Appellant's DNA was recovered from the tip of the knife and the handle while the victim's DNA was only recovered from the bottom of the blade, suggesting she was stabbed first. Circumstantial evidence and direct evidence inherently possess the same probative

value. *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001).

{¶80} Appellant admitted he stabbed the victim to his mother in front of a nurse but did not contemporaneously mention his self-defense story to his mother, even though he previously told a police officer he used the knife to protect himself because the victim was coming after him. Appellant testified in his own defense. We note the jury did not believe the state's theory that Appellant killed his wife with prior calculation and design, as the jury found him not guilty of aggravated murder. However, they believed he purposely killed her without falling under a self-defense scenario. The jury saw Appellant's demeanor and gestures as he claimed the victim stabbed him in the left side of his neck and then caused cuts to the inside of his left wrist and a stab wound to the other side of his neck as he was disarming her. They heard his voice and watched for any signs of deceit as he said his wounds were not self-inflicted. The jury was not required to believe the victim attacked Appellant. It was reasonable for the jury to conclude Appellant's wounds were self-inflicted in a suicide attempt or in an attempt to create the appearance of a legal justification for stabbing his wife.

{¶81} The jury was in the best position to judge Appellant's credibility and weigh the evidence. When there is more than one believable interpretation of the evidence, we do not choose which theory we believe is more credible and substitute it for the theory chosen by the jury. *State v. Baker*, 7th Dist. Mahoning, 2020-Ohio-7023, 166 N.E.3d 601, ¶ 148, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). The jury did not clearly lose its way and create a manifest miscarriage of justice, and this is not the "exceptional case where the evidence weighs heavily" against the jury verdict and requires this court to step in as the "thirteenth juror." *See Lang*,

> 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596
> at ¶ 220. This assignment of error is overruled.

*Rydarowicz*, 210 N.E.3d at 1152–54.

Rydarowicz hasn't argued, let alone shown, that the Ohio court of appeals' sufficiency determination was unreasonable. *See Brown*, 567 F.3d at 205. Applicable here, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [fact-finder]." *Id.* "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson*, 200 F.3d at 992. So even if a sufficiency-of-evidence claim on self-defense were cognizable, it would fail.

**Conclusion**

For the reasons set forth above, I recommend that Rydarowicz's Petition be dismissed.

Dated: March 4, 2025

        */s/ James E. Grimes Jr.*
        James E. Grimes Jr.
        U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).